## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CG TECHNOLOGY DEVELOPMENT, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| WILLIAM HILL U.S. HOLDCO, INC.; | ) | C.A. No. _____ |
| BRANDYWINE BOOKMAKING LLC; and | ) | |
| WILLIAM HILL PLC, | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CG Technology Development, LLC ("CG Tech") hereby brings this Complaint for patent infringement against Defendants William Hill U.S. Holdco, Inc., Brandywine Bookmaking LLC,  and William Hill PLC ("William Hill" or "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271 *et seq*., by Plaintiff against Defendants for infringement of U.S. Patent Nos. 9,240,098; 9,269,224; and 9,076,305 (collectively the "Patents-in-Suit").

## THE PARTIES

2.      CG Tech is a limited liability company incorporated in Nevada with its principal place of business at 2575 South Highland Drive, Las Vegas, Nevada, 89109.

3.      Upon information and belief, William Hill U.S. Holdco, Inc., is a corporation organized and existing under the laws of Delaware, with a principal place of business located at 6325 South Rainbow Blvd., Suite 100, Las Vegas, NV 89118.

4.      Upon information and belief, Brandywine Bookmaking LLC, is a limited liability company incorporated in Delaware, with a principal place of business located at 6325 South Rainbow Blvd., Suite 100, Las Vegas, NV 89118.

5.      Upon information and belief, William Hill PLC, is a corporation organized and existing under the laws of Gibraltar, with a principal place of business located at Greenside House, 50 Station Road, Wood Green, London, UK N227TP.

6.      Upon information and belief, Brandywine Bookmaking LLC is a wholly owned subsidiary of William Hill U.S. Holdco, Inc.

7.       Upon information and belief, William Hill U.S. Holdco, Inc. is a wholly owned subsidiary of William Hill PLC, and provides comprehensive North American business operations for William Hill PLC.

8.      Upon information and belief, and as further explained below, Defendants have been and are acting in concert, and are liable jointly, severally, or otherwise for a right to relief related to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling the infringing products in this District.  In addition, this action involves questions of law and fact that are common to all Defendants.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a).

10.      Defendants William Hill U.S. Holdco, Inc. and Brandywine Bookmaking LLC are subject to personal jurisdiction in this District because, based on information and belief, they are each deemed to reside in this judicial district by virtue of being incorporated in the State of

Delaware.  Accordingly, this Court may properly exercise personal jurisdiction over William Hill U.S. Holdco, Inc. and Brandywine Bookmaking LLC.

11.     Defendants are subject to this Court's personal jurisdiction pursuant to Fed. R. Civ. P. 4(k) upon service of process.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or 1400(b) at least because Defendants William Hill U.S. Holdco, Inc. and Brandywine Bookmaking LLC are each deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware.

13.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or 1400(b) at least because Defendant William Hill PLC are subject to personal jurisdiction in this District.

## THE PATENTS-IN-SUIT

14.     U.S. Patent No. 9,240,098 ("the '098 patent"), titled "Kiosk for Gaming," was duly and legally issued by the USPTO on January 19, 2016, to the listed inventors Paul Williams and Matthew Morrissette.  CG Tech is the assignee and sole owner of the '098 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action, enforce the '098 patent against infringers, and collect damages for all relevant times.  A copy of the '098 patent is attached as **Exhibit A.**

15.     U.S. Patent No. 9,269,224 ("the '224 patent"), titled "Devices for Gaming," was duly and legally issued by the USPTO on February 23, 2016, to the listed inventors Paul Williams, Phillip L. Flaherty, Quinton Singleton, Kathleen Tam, and Matthew Morrissette.  CG Tech is the assignee and sole owner of the '224 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action, enforce the '224 patent against

infringers, and collect damages for all relevant times.  A copy of the '224 patent is attached as **Exhibit B.**

16.     U.S. Patent No. 9,076,305 ("the '305 patent"), titled "Wagering on Event Outcomes During the Event," was duly and legally issued by the USPTO on July 7, 2015, to the listed inventors Lee M. Amaitis, Andrew Garrood, Mike Colbert, Heather Parks, Anthony Storm, Foster Barton, and Thomas D. Bradshaw.  CG Tech is the assignee and sole owner of the '305 patent, with all substantive rights in and to that patent, including the sole and exclusive right to bring this action, enforce the '305 patent against infringers, and collect damages for all relevant times.  A copy of the '305 patent is attached as **Exhibit C.**

## GENERAL ALLEGATIONS

17.     William Hill's sports betting gaming business uses innovative technology owned by Plaintiff as intellectual property.  Plaintiff's technology allows users to wager bets on sporting events remotely using wireless mobile devices while meeting strict state regulations.

18.     William Hill's Chief Executive Office is Joseph M. Asher, who oversees William Hill's sports betting gaming business.

19.     Prior to becoming CEO of William Hill, Asher became privy to revolutionary sports betting concepts and inventions, like those developed and eventually disclosed in the Patents-in-Suit, through his employment with Plaintiff's business affiliates and parent company.

20.     In 2004, Asher was offered and accepted a limited partnership interest in Plaintiff's parent company, CG Technology, L.P., where he served as the Managing Director and Vice President during the initial development of CG Technology L.P.'s proprietary sports betting concepts.

21.     In addition to obtaining an equity interest in CG Technology, L.P., Asher was

subject to a contractual duty of loyalty that included non-compete obligations due to the proprietary and valuable nature of the sports betting business that was being developed.

22.     Asher was intimately involved in developing CG Technology, L.P.'s patent portfolio and is the named inventor on multiple patents assigned to Plaintiff's affiliates.

23.     In 2007, after learning about CG Technology, L.P.'s business, Asher resigned his employment with Plaintiff's affiliates and started his own competing business using the concepts owned by Plaintiff's affiliates and its parent company.

24.     In 2011, William Hill sought to enter the North American sports betting market. William Hill purchased Asher's business and began using the proprietary concepts developed while Asher was a partner at Plaintiff's parent corporation and employed by Plaintiff's affiliates, including the sports betting concepts.

25.     William Hill now holds itself out to be one of the worlds leading betting and gaming companies and one of the most recognized brands in the industry.  *See, e.g.*, *About*, WILLIAM HILL, https://www.williamhill.us/corporate/about; *William Hill Today*, WILLIAM HILL, https://www.williamhillplc.com/about/william-hill-today.  William Hill provides access to its sports betting gaming platform through its mobile applications running on computing devices and sports betting kiosk units.  *See, e.g.*, *William Hill Mobile*, ITUNES, https://itunes.apple.com/us/app/william-hill-mobile/id1021616457?ls=1&mt=8; *William Hill Mobile Sports App*, WILLIAM HILL, https://www.williamhill.us/mobile; *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk/.  The William Hill Mobile Application is available on any iOS or Android device, including any iPhone, iPad, iPod touch, Android phone, or Android tablet.  *FAQ - New Account*, WILLIAM HILL, https://www.williamhill.us/faq-new-account.  William Hill offers various types of sports betting

wagers to users, including straight bets, parlay bets, round robins, and teasers. *William Hill Mobile*, ITUNES, https://itunes.apple.com/us/app/william-hill-mobile/id1021616457?ls=1&mt=8; *Guide to Horse Racing*, WILLIAM HILL, https://www.williamhill.us/wp-content/uploads/2013/05/Guide-to-Horse-Racing.pdf. William Hill's gaming platform detects signals produced by users' computing devices to authenticate users for gaming activities. For example, William Hill authenticates and verifies each user's age, identity, and location information to comply with various jurisdictional regulations. The detected signals are compared to information stored in a database or lookup table for a match before authorizing the users to play its casino games.

26.     On information and belief, William Hill uses, tests, and provides its sports betting platform on a physical kiosk available at various sports betting locations. The kiosk includes a scanner for scanning identification information from a user's driver's license, a camera for verifying the user through video, and a touch screen for receiving user inputs and displaying information. The kiosk presents instructions to a user to enable registering an account and verifying the user's identity. Once registration is complete, the user can access the gaming activities offered through the William Hill platform via the kiosk or a mobile gaming device.

27.     On information and belief, William Hill's gaming platform receives live sporting event information to enable sports wagering. During a live event, William Hill allows "InPlay" gaming, providing wagering options on live sporting events. On information and belief, William Hill creates betting markets based on the offered wagering options and determines betting odds for the wagers based on probability information. William Hill receives wagers from users until the betting market is closed after a period of time, and a payout is paid based on the wagering option occurring.

28.     William Hill has also induced and continues to induce acts by third parties that William Hill knows or should know constitute direct infringement of at least one of the Patents-in-Suit.  William Hill actively induced infringement of at least one of the Patents-in-Suit by designing their sports betting platform such that it infringes at least one of the Patents-in-Suit and by purposefully directing, promoting, encouraging, and causing the use of its sports betting platform by third parties in ways that infringe the Patents-in-Suit.

29.     On information and belief, William Hill has been aware of the Patents-in-Suit since at least the filing of this Complaint, if not through Asher's previous intimate knowledge of Plaintiff's patent portfolio and through competitive intelligence.

## THE PATENTED TECHNOLOGY

## U.S. PATENT NOS. 9,204,098 AND 9,269,224

30.     CG Tech is a patent holding company for a leading designer, developer, and manufacturer of innovative technology and risk management solutions for interactive gaming industries worldwide.  Interactive gaming involving wagering is a heavily regulated industry, and gaming operators and developers must comply with strict regulations prescribed by different regulatory agencies and administrative bodies.  Prior art methods in the gaming industry used a number of different systems for registering users, verifying their identity, funding accounts, verifying funding, authorizing gameplay, and offering games to a user.  Each of these functions required a separate device or system, and included its own set of regulations to follow.  Prior art methods could not provide an efficient and secure way to consolidate these different transactions and functionalities while simultaneously complying with the high standards set by regulators and providing an improved customer experience.

31.     The '098 and '224 patents relate to novel kiosk stations that provide secure and

scalable technical solutions designed to meet the highest standards of regulatory compliance, transactional security, and customer experience.  The kiosk stations are significant improvements over the prior art and enable a non-conventional combination of features not present in the prior art.  For example, the kiosk stations independently register a user for a gaming account and verify the user's eligibility for interactive gaming before authorizing gameplay.  The kiosk stations are physical, tangible devices installed in establishments for use by customers, and require a host of separate sensors, devices, and software that work together in a novel and unconventional way in a seamless, accurate, and secure manner.  One embodiment of the claimed kiosk is shown in the figure below.



32.     The claimed kiosk of the '098 patent is directed to subject matter that is rooted in technology and discloses a technological solution to a technological problem in the field of user verification and authorization for networked systems.  For example, a principal object and advantage of the claimed kiosk addresses the technical problem of accurately and consistently verifying a user's identity automatically to ensure gameplay eligibility.  One way the claimed kiosk station solves this technical problem is by using a novel combination of biological sensors, identification scanners, and complex data processing operations to conduct a two-factor verification of the user before offering gaming activities.  The kiosk houses an identification scanner and runs specialized software that can specifically identify and verify government-issued identification documents using the proprietary security features in these documents.

33.     Another way the claimed kiosk solves this technical problem is by using a biological sensor housed in the kiosk to obtain biological information from the user and digitize it for comparison with reference information in real time.  For example, the biological sensor may include a camera that captures the user's facial characteristics in a digital image.  The kiosk utilizes complex facial recognition algorithms to analyze the captured image data and compare the data with a reference image of the user to verify the user's identity.

34.     Another principal object and advantage of the claimed invention solves the problem of providing a networked system that handles and transmits sensitive user information that meets regulatory standards of privacy and protection.  One way the claimed kiosk solves this technical problem is by disclosing a kiosk with a secure housing for the identification scanner, biological sensor, and microprocessors programmed with the specialized software.  The microprocessors can divide the tasks and computations performed by the interconnection of the various devices, networks, and sensors in the kiosk from the user-level software and games,

providing a layer of isolation against intrusion.

35.     Another principal object and advantage of the claimed invention is that it solves the problem of intrusion and theft of funds accepted during gameplay.  One way the claimed kiosk solves this technical problem is by utilizing an unconventional network of currency and coin sensor units that verify the authenticity of the user's funds.

36.     Another principal object and advantage of the claimed invention is to provide an improved user interface for electronic devices.  The claimed kiosk addresses problems with efficiency of registering users and verifying their identities using an electronic device in real time.  The claimed kiosk includes a user interface that allows a user to more quickly populate data in an application using the various sensors in the kiosk, improving the speed of a user's navigation through the registration and verification process that was not present in the prior art.

37.     The claimed kiosk discloses a discrete and specific system for automatically registering and verifying users' identities to ensure gameplay eligibility in real time, and the claims recite a specific implementation that is necessarily rooted in computer technology.  For example, the claimed kiosk of the '098 patent discloses a "kiosk for gaming by patrons, comprising: a kiosk housing designed [to] hold a processor, identification scanner, and biological sensor, and to permit installation at a site for interaction with human patrons; an identification scanner mounted in the kiosk housing and designed to accept an identification document and to scan identification information from the identification document into digital form for transmission over a network; a biological sensor mounted in the kiosk housing and oriented to obtain biological data describing a human patron at the kiosk into digital form for transmission over a communication network; input-output device(s) mounted in the kiosk housing and designed to accept registration/login information and gaming commands from a human patron

and to present information to the human patron for interactive gaming; one or more microprocessors mounted in the kiosk housing and programmed to: present instructions to the human patron through the input-output device(s), including an instruction to the patron to insert a government-issued identification document into the identification scanner; obtain a digital form of the patron's identification from the patron's government-issued identification document using the identification scanner; obtain biological data describing a biological feature of the patron from the biological sensor; verify the identity of the patron and acceptability of the patron for gaming based at least in part on the digital form of the patron's identification and the biological data; and on verification, to offer gaming activities to the verified patron." The claimed kiosk involves tangible components and complex data processing operations that are necessarily rooted in computer technology.

38.     In addition to the technical solutions, objects, and advantages of the '098 patent described above, the claimed kiosk of the '224 patent addresses the technical problem of verifying a user's identity to ensure gameplay eligibility in various jurisdictions that include different requirements and regulations. One way the claimed kiosk station solves this technical problem is through customization of the sensors, devices, and specialized software to handle the specific requirements of a particular jurisdiction. For example, the kiosk station may determine the correct jurisdiction and automatically adapt the registration process, using the kiosk station's combination of various sensors and input/output devices, to that particular jurisdiction.

39.     Another principal object and advantage of the claimed invention solves the problem of interoperability across various gaming operators. For example, gaming operators typically provide platforms for users that require separate registration, verification, and funding for an account. A user's account with one gaming operator is not compatible with the user's

account at another gaming operator, preventing the collection or transfer of information or funds across accounts.  One way the claimed kiosk solves this technical problem is by providing a secure networked solution for obtaining and transferring information across gaming operator servers.  For example, the kiosk station may facilitate a transfer of funds between disparate gaming operators by securely connecting to the servers of each gaming operator in a manner that complies with the gaming operators' compliance and privacy requirements.  As another example, the kiosk station may gather information relating to the user's gaming activities from the disparate gaming operator servers, consolidating the user's reporting requirements for tax purposes.

40.     The claimed kiosk of the '224 patent discloses a specific implementation that is necessarily rooted in computer technology, and discloses, for example, a "computing device with a processor, memory, at least one identification acceptor, at least one biological sensor, and at least one network connector, and designed to permit installation at a site for interaction with human patrons; the identification acceptor being designed to accept a government-issued identity document and to scan identification information from the identification document into digital form for transmission over a network; the biological sensor being designed and oriented to obtain biological data describing a human patron into digital form for transmission over a communication network; the input-output device(s) being designed to accept registration/login information and gaming commands from a human patron and to present information to the human patron for interactive gaming; the one or more microprocessors being programmed to: present instructions to the human patron through the input-output device(s), including an instruction to the patron to insert an identification document into the identification acceptor; obtain a digital form of the patron's identification from the identification acceptor; obtain

biological data describing a biological feature of the patron from the biological sensor; verify the identity of the patron and acceptability of the patron for gaming based at least in part on the digital form of the patron's identification and the biological data; and on verification, to offer gaming activities to the verified patron."  The claimed kiosk involves tangible components and complex data processing operations that are necessarily rooted in computer technology.

41.     The novelty of the claimed kiosks was confirmed during prosecution of the patents.  As evidenced by the file wrapper for the '098 patent (Exhibit D), and the file wrapper for the '224 patent (Exhibit E), the USPTO conducted separate thorough searches of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art. On information and belief, it is the practice of the USPTO not to cite excessive cumulative art and to discuss the most representative and pertinent art in the office actions.  The USPTO confirmed the patentability of the '098 patent on November 18, 2015, and separately confirmed the patentability of the '224 patent on February 23, 2016, because the claims of each patent recited a novel combination of elements not disclosed or suggested in the prior art.

42.     The inventions are directed to patent-eligible subject matter representing new, novel, and useful improvements over the existing and/or patentably distinct means and methods of the prior art.

## U.S. PATENT NO. 9,076,305

43.     Determining accurate probabilities for game events is one of the most important aspects for a bookkeeper in the gaming industry.  Prior art methods for determining these probabilities relied on a variety of different sources to determine accurate probabilities for each game outcome.  Determining these probabilities is a time-intensive, time sensitive, and laborious process requiring evaluation of a variety of statistical information from multiple sources.

Accordingly, prior art methods determined these probabilities before the start of the game or event.  Gaming operators that attempted to offer betting opportunities during a live event (after the start of the game) risked determining inaccurate probabilities due to the very short time frame available, as well as the speed and breadth of incoming statistical information.  The traditional systems required the gaming operators to determine the probabilities manually and "on the fly," further adding to the accuracy and timeliness problems.

44.     The '305 patent solves these technical problems and relates to a novel networked system for determining accurate, reliable probabilities for in-game events during live events. The claimed networked system for determining probabilities provides significant improvements over the prior art and enables a non-conventional combination of features not present in the prior art.  For example, the networked system utilizes complex algorithms to automatically manipulate and evaluate large amounts of statistical data in real time to determine accurate probabilities of in-game events during a live sporting event.

45.     The claimed networked system of the '305 patent is directed to subject matter that is rooted in technology and discloses a technological solution to a technological problem in the field of complex networked systems.  For example, a principal object and advantage of the claimed networked system addresses the technical problem of accurately determining probabilities for events occurring in real time using a large amount of information obtained from disparate sources.  One way the claimed networked system solves this technical problem is by using complex algorithms to automatically manipulate and evaluate information obtained at a networking system connected to various sources of information.  For example, the algorithm can automatically determine the probabilities of in-game events in real time based on the information.  Another way the claimed networked system solves this technical problem is by

automatically determining the reliability of the sources of information, in real time, to increase the accuracy of the final determined probability.  The claimed networked system involves tangible components and complex data processing operations that are necessarily rooted in computer technology and improve the functionality of the computer itself.

46.     The novelty of the claimed networked system was confirmed during prosecution of the patent.  As evidenced by the file wrapper for the '305 patent (Exhibit F), the USPTO conducted a thorough search of the prior art and rejected initial recitations of the claims based on combinations of several pieces of prior art.  On information and belief, it is the practice of the USPTO not to cite excessive cumulative art and to discuss the most representative and pertinent art in the office actions.  On July 7, 2015, the USPTO confirmed the patentability of the '305 patent because the claims recited a novel combination of elements not disclosed or suggested in the prior art.

## CLAIMS FOR RELIEF

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,240,098

47.     Plaintiff incorporates by reference paragraphs 1-46, as if fully set forth herein.

48.     On information and belief, William Hill directly infringes and/or induces others to infringe one or more claims of the '098 patent.  William Hill, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '098 patent.  Non-limiting examples of such infringement of at least claims 2, 4-6, 8-15, 17-19, and 21-23 of the '098 patent are provided below, based on the limited information currently available to Plaintiff.

49.     William Hill does not have a license or permission to use the '098 patent.

50.     By way of example only and for purposes of this Complaint, William Hill tests, uses, and/or provides the sports betting platform in a manner that infringes each limitation of at least one asserted claim of the '098 patent, consistent with the information set forth in the following paragraphs.[1]

51.     On information and belief, William Hill infringes all elements of claim 2, which recites as follows:

2. A kiosk for gaming by patrons, comprising:

a kiosk housing designed hold a processor, identification scanner, and biological sensor, and to permit installation at a site for interaction with human patrons;

an identification scanner mounted in the kiosk housing and designed to accept an identification document and to scan identification information from the identification document into digital form for transmission over a network;

a biological sensor mounted in the kiosk housing and oriented to obtain biological data describing a human patron at the kiosk into digital form for transmission over a communication network;

input-output device(s) mounted in the kiosk housing and designed to accept registration/login information and gaming commands from a human patron and to present information to the human patron for interactive gaming;

one or more microprocessors mounted in the kiosk housing and programmed to:

---

[1] CG Tech relies on the William Hill Sports Betting Kiosk units as shown, for example, in *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk, as a representative product of the accused products, including other William Hill kiosk units. Further, to the extent necessary, CG Tech relies on the William Hill Mobile App available through iTunes for the iPhone mobile device as a representative product of the accused products, including the William Hill Mobile App running on other iOS devices and the William Hill Mobile App available for Android devices. *See, e.g.*, *William Hill Mobile*, ITUNES, https://itunes.apple.com/us/app/william-hill-mobile/id1021616457?ls=1&mt=8 ("This app is designed for both iPhone and iPad;" "Compatible with iPhone, iPad, and iPod touch").  Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

present instructions to the human patron through the input-output
device(s), including an instruction to the patron to insert a
government-issued identification document into the identification
scanner;

obtain a digital form of the patron's identification from the patron's
government-issued identification document using the identification
scanner;

obtain biological data describing a biological feature of the patron from
the biological sensor;

verify the identity of the patron and acceptability of the patron for gaming
based at least in part on the digital form of the patron's
identification and the biological data; and

on verification, to offer gaming activities to the verified patron.

52.     On information and belief, William Hill infringes all elements of claim 2, by

testing, using, and/or providing their sports betting kiosk that comprises "a kiosk housing

designed hold a processor, identification scanner, and biological sensor, and to permit

installation at a site for interaction with human patrons."  '098 patent, col. 7, ll. 7-9.  For

example, William Hill provides its sports betting kiosks in "sports book locations throughout

Nevada," allowing users to establish a new Account Wagering or Mobile Sports wagering

account.  *See, e.g.*, *William Hill Sports Betting Kiosks*, WILLIAM HILL,

https://www.williamhill.us/kiosk.



53.     On information and belief, William Hill's sports betting kiosk includes "an identification scanner mounted in the kiosk housing and designed to accept an identification document and to scan identification information from the identification document into digital form for transmission over a network." '098 patent, col. 7, ll. 10-14.  For example, the kiosk includes a scanner and directs the user to scan their driver's license to create an account.



54.     On information and belief, William Hill's sports betting kiosk includes "a biological sensor mounted in the kiosk housing and oriented to obtain biological data describing a human patron at the kiosk into digital form for transmission over a communication network." '098 patent, col. 7, ll. 16-19.  For example, the William Hill kiosk includes a camera to video authorize the identity of the user.





55. On information and belief, William Hill's sports betting kiosk includes "input-output device(s) mounted in the kiosk housing and designed to accept registration/login

information and gaming commands from a human patron and to present information to the

human patron for interactive gaming." '098 patent, col. 7, ll. 20-23.  For example, the kiosk

includes a touch screen to accept user inputs during the registration process and to place wagers.



   56. On information and belief, William Hill's sports betting kiosk includes "one or

more microprocessors mounted in the kiosk housing and programmed to: present instructions to

the human patron through the input-output device(s), including an instruction to the patron to

insert a government-issued identification document into the identification scanner." '098 patent,

col. 7, ll. 24-29.  For example, the William Hill kiosk includes at least one microprocessor within

the displayed housing to operate the displayed user interface.  For example, the William Hill

kiosk displays a message to the user instructing the user to scan a driver's license.



57.     On information and belief, William Hill's sports betting kiosk microprocessor is programmed to "obtain a digital form of the patron's identification from the patron's government-issued identification document using the identification scanner; [and] obtain biological data describing a biological feature of the patron from the biological sensor."  '098 patent, col. 7, ll. 30-34.  For example, William Hill extracts information from the driver's license scan and obtains images of the user's face during the video authorization of the user's identity.





58.     On information and belief, William Hill's sports betting kiosk microprocessor is programmed to "verify the identity of the patron and acceptability of the patron for gaming based at least in part on the digital form of the patron's identification and the biological data; [and] on verification, to offer gaming activities to the verified patron."  '098 patent, col. 7, ll. 35-40.  For example, William Hill verifies the user's identity at the kiosk and permits the user to deposit and wager on sports events once registration is complete.  *See, e.g.*, *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk.



Rolling out in several of our sports book locations throughout Nevada are our new Sports Betting Kiosk units. These new units perform all of the same functions as our standard William Hill Sports Betting Kiosks, but now allow you to establish a new Account Wagering or Mobile Sports wagering account on your own at the unit, without having to do so at the ticket counter. Simply have a valid driver's license and your cash deposit ready to get going on the new Sports Betting Kiosks! Also, cash deposits can also be made to accounts through the kiosk, helping you avoid lines at the counter to do so.



59.     As a result of William Hill's infringement of the '098 patent, IG LLC has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,269,224

60.     Plaintiff incorporates by reference paragraphs 1-59 as if fully set forth herein.

61.     On information and belief, William Hill directly infringes and/or induces others to infringe one or more claims of the '224 patent.  William Hill, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied, distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '224 patent.  Non-limiting examples of such infringement of at least claims 2, 4-7, and 9-14 of the '224 patent are provided below, based on the limited information currently available to Plaintiff.

62.     William Hill does not have a license or permission to use the '224 patent.

63.     By way of example only and for purposes of this Complaint, William Hill tests, uses, and/or provides the sports betting platform in a manner that infringes each limitation of at least one asserted claim of the '224 patent, consistent with the information set forth in the following paragraphs.[2]

---

[2] CG Tech relies on the William Hill Sports Betting Kiosk units as shown, for example, in *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk, as a representative product of the accused products, including other William Hill kiosk units. Further, to the extent necessary, CG Tech relies on the William Hill Mobile App available through iTunes for the iPhone mobile device as a representative product of the accused products, including the William Hill Mobile App running on other iOS devices and the William Hill Mobile App available for Android devices. *See, e.g.*, *William Hill Mobile*, ITUNES, https://itunes.apple.com/us/app/william-hill-mobile/id1021616457?ls=1&mt=8 ("This app is designed for both iPhone and iPad;" "Compatible with iPhone, iPad, and iPod touch").  Upon information and belief, all of the accused products share the same, or substantially the same,

64.     On information and belief, William Hill infringes all elements of claim 2, which

recites as follows:

> 2. A computing device for gaming by patrons, comprising:
>
> a computing device with a processor, memory, at least one identification acceptor, at least one biological sensor, and at least one network connector, and designed to permit installation at a site for interaction with human patrons;
>
> the identification acceptor being designed to accept a government-issued identity document and to scan identification information from the identification document into digital form for transmission over a network;
>
> the biological sensor being designed and oriented to obtain biological data describing a human patron into digital form for transmission over a communication network;
>
> the input-output device(s) being designed to accept registration/login information and gaming commands from a human patron and to present information to the human patron for interactive gaming;
>
> the one or more microprocessors being programmed to:
>
>> present instructions to the human patron through the input-output device(s), including an instruction to the patron to insert an identification document into the identification acceptor;
>>
>> obtain a digital form of the patron's identification from the identification acceptor;
>>
>> obtain biological data describing a biological feature of the patron from the biological sensor;
>>
>> verify the identity of the patron and acceptability of the patron for gaming based at least in part on the digital form of the patron's identification and the biological data; and
>>
>> on verification, to offer gaming activities to the verified patron.

65.     On information and belief, William Hill infringes all elements of claim 2, by

testing, using, and/or providing their sports betting kiosk that comprises "a computing device

infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

with a processor, memory, at least one identification acceptor, at least one biological sensor, and at least one network connector, and designed to permit installation at a site for interaction with human patrons." '224 patent, col. 21, ll. 54-58.  For example, William Hill provides its sports betting kiosks in "sports book locations throughout Nevada," allowing users to establish a new Account Wagering or Mobile Sports wagering account.  *See, e.g.*, *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk.



66.   On information and belief, William Hill's sports betting kiosk includes "the

identification acceptor being designed to accept a government-issued identity document and to scan identification information from the identification document into digital form for transmission over a network." '224 patent, col. 21, ll. 59-62.  For example, the kiosk includes a scanner and directs the user to scan their driver's license to create an account.



67.     On information and belief, William Hill's sports betting kiosk includes "the biological sensor being designed and oriented to obtain biological data describing a human patron into digital form for transmission over a communication network." '224 patent, col. 21, ll. 63-65.  Upon information and belief, the William Hill kiosk includes a camera to video authorize the identity of the user.





68.     On information and belief, William Hill's sports betting kiosk includes "the input-

01:23085923.1

output device(s) being designed to accept registration/login information and gaming commands from a human patron and to present information to the human patron for interactive gaming." '224 patent, col. 21, l. 66 to col. 22, l. 2.  For example, the kiosk includes a touch screen to accept user inputs during the registration process and to place wagers.



69.     On information and belief, William Hill's sports betting kiosk includes "the one or more microprocessors being programmed to: present instructions to the human patron through the input-output device(s), including an instruction to the patron to insert an identification document into the identification acceptor." '224 patent, col. 22, ll. 3-7.  For example, the William Hill kiosk includes at least one microprocessor within the displayed housing to operate the displayed user interface.  The William Hill kiosk displays a message to the user instructing

the user to scan a driver's license.



70.     On information and belief, William Hill's sports betting kiosk includes the

microprocessor being programmed to "obtain a digital form of the patron's identification from

the identification acceptor; [and] obtain biological data describing a biological feature of the

patron from the biological sensor." '224 patent, col. 22, ll. 8-11.  For example, William Hill

extracts information from the driver's license scan and obtains images of the user's face during

the video authorization of the user's identity.





71.     On information and belief, William Hill's sports betting kiosk includes the microprocessor being programmed to "verify the identity of the patron and acceptability of the patron for gaming based at least in part on the digital form of the patron's identification and the biological data; and on verification, to offer gaming activities to the verified patron." '224 patent, col. 22, ll. 12-17.  For example, William Hill verifies the user's identity at the kiosk and permits the user to deposit and wager on sports events once registration is complete.  *See, e.g.*, *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk.



Rolling out in several of our sports book locations throughout Nevada are our new Sports Betting Kiosk units. These new units perform all of the same functions as our standard William Hill Sports Betting Kiosks, but now allow you to establish a new Account Wagering or Mobile Sports wagering account on your own at the unit, without having to do so at the ticket counter. Simply have a valid driver's license and your cash deposit ready to get going on the new Sports Betting Kiosks! Also, cash deposits can also be made to accounts through the kiosk, helping you avoid lines at the counter to do so.



72.     As a result of William Hill's infringement of the '224 patent, IG LLC has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty.

<u>**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,076,305**</u>

73.     Plaintiff incorporates by reference paragraphs 1-72 as if fully set forth herein.

74.     On information and belief, William Hill directly infringes and/or induces others to infringe one or more claims of the '305 patent.  William Hill, directly or through its agents, customers, and/or intermediaries, has made, used, tested, imported, provided, supplied,

distributed, sold, and/or offered for sale products and/or systems that infringe (either directly or under the doctrine of equivalents) one or more claims of the '305 patent.  Non-limiting examples of such infringement of at least claims 1, 3-12, 18, and 20-22 of the '305 patent are provided below, based on the limited information currently available to Plaintiff.

75.     William Hill does not have a license or permission to use the '305 patent.

76.     By way of example only and for purposes of this Complaint, William Hill tests, uses, and/or provides the sports betting platform in a manner that infringes each limitation of at least one asserted claim of the '305 patent, consistent with the information set forth in the following paragraphs.[3]

77.     On information and belief, William Hill infringes all elements of claim 1, which recites as follows:

1. A method comprising:

receiving by at least one processor state information of a live event in substantially real time, in which the live event comprises a sporting event played by human players according to predetermined rules that are used to determine at least one winner of the sporting event;

after a start of the sporting event, determining by the at least one processor a plurality of possible future states of the sporting event based on the state information, the possible future states occurring before an end of the sporting event;

---

[3] CG Tech relies on the William Hill Sports Betting Kiosk units as shown, for example, in *William Hill Sports Betting Kiosks*, WILLIAM HILL, https://www.williamhill.us/kiosk, as a representative product of the accused products, including other William Hill kiosk units. Further, to the extent necessary, CG Tech relies on the William Hill Mobile App available through iTunes for the iPhone mobile device as a representative product of the accused products, including the William Hill Mobile App running on other iOS devices and the William Hill Mobile App available for Android devices. *See, e.g.*, *William Hill Mobile*, ITUNES, https://itunes.apple.com/us/app/william-hill-mobile/id1021616457?ls=1&mt=8 ("This app is designed for both iPhone and iPad;" "Compatible with iPhone, iPad, and iPod touch").  Upon information and belief, all of the accused products share the same, or substantially the same, infringing qualities with the representative product, and infringe the asserted patents in the same manner as set forth in the Complaint.

after a start of the sporting event, creating by the processor a first betting market for betting on at least one of the plurality of possible future states, in which the plurality of users comprises a first user, and in which the act of creating a first betting market comprises:

determining by the processor a probability for each of the plurality of possible future states based on probability information, in which the act of determining a probability comprises determining a probability for at least one of the plurality of possible future states based on probability information and reliability information associated with the probability information;

based at least in part on the probabilities, determining by the processor odds for betting on at least one of the plurality of possible future states; and

causing information about the plurality of possible future states and the odds to be displayed to the plurality of users;

after creating the first betting market, receiving by the processor from a first of a plurality of users a first bet comprising a selection of one of the plurality of possible future states;

after receiving the first bet, closing by the processor the first betting market;

sending from the at least one processor an instruction signal to close the first betting market;

determining by the at least one processor that the possible future state selected by the first user has occurred; and

causing, by the at least one processor, a payout to be paid to the first user based on the first bet and the act of determining that the possible future state selected by the first user has occurred.

78.     On information and belief, William Hill infringes all elements of claim 1, by testing, using, and/or providing their sports betting platform that is accessed by a communication device, where the sports betting platform performs "[a] method comprising: receiving by at least one processor state information of a live event in substantially real time, in which the live event comprises a sporting event played by human players according to predetermined rules that are used to determine at least one winner of the sporting event." '305 patent, col. 43, ll. 42-47.  For

example, William Hill receives live information relating to various sporting events to enable users to enter wagers.



79.     On information and belief, William Hill's sports betting platform includes "after a start of the sporting event, determining by the at least one processor a plurality of possible future states of the sporting event based on the state information, the possible future states occurring before an end of the sporting event."  '305 patent, col. 43, ll. 48-52.  For example, on information and belief, William Hill permits live "InPlay" wagering on various sports, where a user may wager on a future state of the event that happens before it ends.



80.    On information and belief, William Hill's sports betting platform includes "after a start of the sporting event, creating by the processor a first betting market for betting on at least one of the plurality of possible future states, in which the plurality of users comprises a first user, and in which the act of creating a first betting market comprises: determining by the processor a probability for each of the plurality of possible future states based on probability information, in which the act of determining a probability comprises determining a probability for at least one of the plurality of possible future states based on probability information and reliability information

associated with the probability information; based at least in part on the probabilities, determining by the processor odds for betting on at least one of the plurality of possible future states; and causing information about the plurality of possible future states and the odds to be displayed to the plurality of users." '305 patent, col. 43, l. 53 to col. 44, l. 3.  Upon information and belief, the William Hill platform determines odds for the future events in the live sports game based on various information.  For example, William Hill provides an InPlay option to users and displays odds for bets on future states of the sporting event.



The continuous live, in-play wagering on the William Hill sportsbook app is the only one of its kind in Nevada.

81.    On information and belief, William Hill's sports betting platform includes "after creating the first betting market, receiving by the processor from a first of a plurality of users a first bet comprising a selection of one of the plurality of possible future states." '305 patent, col. 44, ll. 4-7.  For example, the William Hill platform enables users to make live InPlay wagers

on sporting events.



82.     On information and belief, William Hill's sports betting platform includes "after receiving the first bet, closing by the processor the first betting market; sending from the at least one processor an instruction signal to close the first betting market." '305 patent, col. 44, ll. 8-11.  On information and belief, the William Hill platform receives bets relating to the future event within a certain window of time, after which no further bets are permitted for the future event.

83.     On information and belief, William Hill's sports betting platform includes "determining by the at least one processor that the possible future state selected by the first user

has occurred; and causing, by the at least one processor, a payout to be paid to the first user based on the first bet and the act of determining that the possible future state selected by the first user has occurred." '305 patent, col. 44, ll. 12-17.  For example, during the InPlay gaming, William Hill determines whether the future event wagered on during InPlay occurred.  The platform further determines the user's payout based on this determination.



84.     As a result of William Hill's infringement of the '305 patent, IG LLC has suffered and continues to suffer damages, in an amount not yet determined, of at least a reasonable royalty.

**JURY DEMAND**

85.    Plaintiff requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that the Court find in its favor and against Defendants, and that the Court grants Plaintiff the following relief:

a.   a declaration that Defendants infringe the Patents-in-Suit under 35 U.S.C. § 271(a) and/or (b), and a final judgment incorporating same;

b.   an award of damages sufficient to compensate Plaintiff for infringement of the Patents-in-Suit by Defendants, together with prejudgment and postjudgment interest under 35 U.S.C. § 284;

c.   entry of an order compelling Defendants to compensate Plaintiff for any ongoing and/or future infringement of the Patents-in-Suit, in an amount and under terms appropriate under the circumstances;

d.   that this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees, costs, and expenses in accordance with 35 U.S.C. § 285; and

e.   that Plaintiff is granted such other and further relief as the Court may deem just and proper under the circumstances.

DATED: April 10, 2018

OF COUNSEL:

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP

Robert F. Shaffer
Scott A. Allen
Abdul Ghani S. Hamadi
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000
*robert.shaffer@finnegan.com*
*scott.allen@finnegan.com*
*ghani.hamadi@finnegan.com*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Adam W. Poff*
_____
C. Barr Flinn (No. 4092)
Adam W. Poff (No. 3990)
Pilar G. Kraman (No. 5199)
1000 N. King Street
Wilmington, DE 19801
(302) 571-6600
*bflinn@ycst.com*
*apoff@ycst.com*
*pkraman@ycst.com*

*Attorneys for Plaintiff CG Technology Development, LLC*